## ROBERT DAVIS *v.* THE STATE.

1. MISDEMEANORS.—Indictments for misdemeanors must, under the present Constitution, be presented in the District Courts, whence they are transferable to the County, or other proper court, for trial.

2. INDICTMENT. — The following phraseology suffices to show an indictment to be the act of a grand jury of the county therein named: " The grand jurors of the State of Texas, empanelled, charged, and sworn to inquire of offences committed in the county of Montague, upon their oath present in the District Court for said county," etc. Note the distinction between this and the case of *The State v. Hilton*, 41 Texas, 565.

3. AGGRAVATED ASSAULT — CHARGE OF THE COURT.—In the trial of Robert D., for aggravated assault upon Jennie B., there was no controversy that the former was an "adult male" and the latter a "female," and such they were assumed to be by the evidence on both sides, and in the charge of the court. Appellant excepted to this feature of the charge, and assigns it as error. *Held*, that no possible prejudice could have resulted to the appellant, and the objection to the charge is not material.

4. SAME — LIMITATION. — The court instructed, in substance, that the limitation on a prosecution for aggravated assault was one year prior to the finding of the indictment, instead of two years after the commission of the offence. *Held*, that the error was in favor of the defendant, and he will not be heard to complain of it.

5. PRIVILEGED VIOLENCE. — The provision of the Code of this State which recognizes the right of a parent to chastise his child applies only when the real, and not a mere conventional, relation of parent and child exists between the parties.

6. SAME. — A master has no right to whip his servant, even for misconduct.

APPEAL from the County Court of Montague. Tried below before the Hon. B. E. GREEN, County Judge.

Jennie Bailey, the female assaulted, was the only witness introduced by the State. She testified that, during most of the year 1877, she lived at the house of the defendant, and that he, some time during that period, struck her three times with a switch. This was in the county of Montague.

On her cross-examination, she said she had lived at the defendant's twice. The time she went there in 1877 was the second, and it was then agreed that she was to live there as one of the family; but witness did not agree to be whipped. Did not, within half an hour after the blows, tell the defendant's wife that if she (witness) had thought he meant to strike her, she would have killed him with a chair she was scouring; or, if she did say so, does not remember it. Did not, about three weeks afterwards, tell Mrs. Roberts, at her house, that she (witness) supposed the defendant had as much right to whip her as to whip his own children; or does not remember so telling Mrs. Roberts. Before the difficulty, the defendant had "talked saucy" to her, and she had told his child, Sallie Davis, and John Masoner, what the defendant had said to her, and they told him what she said. Defendant came and asked her what she had been saying to the children about him, and when she told him he had been talking saucy to her, he got a switch about a foot and a half long, and about as large as the point of her little finger, and hit her three times with it. Witness, because she had no other home, stayed at defendant's for three or four months after the difficulty, and then went to Mr. Wraybourne's the first time she had a chance to get there.

For the defence, Mrs. Davis, the wife of the defendant, testified that the last time Jennie Bailey came to their house she stayed all night, and in the morning witness and her husband had a talk with her about her living with them. They told her they would not agree to it unless she would agree to be as one of the family, and to be corrected as such. She said she wanted to be as one of the family, and that she would be corrected. Witness told her she would have to

mind the defendant. She was living there as one of the children when the difficulty happened. Witness was not at home when it occurred, but returned home about half an hour afterwards, and then Jennie Bailey told her about it, and said that if she had thought at the time that the defendant meant to strike her, she would or could have killed him with a chair she was scouring. Witness would not say positively that Jennie Bailey agreed to be whipped, but she agreed to be corrected. Defendant is sixty-eight years old.

Sallie Davis, a daughter of the defendant, testified that she saw the difficulty. Jennie Bailey was scouring a chair, when the defendant came up and told her she had been talking about him, and that he wanted her to leave the place. He started for a switch, telling her to leave before he returned; and she refused to do so. He returned with a small switch about a foot and a half long, and struck her with it across her shoulder. She then drew the chair as if to strike him, and he seized it, and struck her with the switch across her arm. He only hit her twice, and told her what she had said to the children about him. She said to the defendant, "Yes, you did say it; you did, you did; in the name of God, you did."

John Masoner, for the defence, testified that he was living at the defendant's when Jennie Bailey came there to live, in 1877. He heard the conversation between her, the defendant, and the defendant's wife, when Jennie Bailey agreed to live there as one of the family, and to be corrected as such. Just before the difficulty, Jennie Bailey told witness and Sallie Davis certain things the defendant had said to her. Witness went and told defendant, and he went to see if she had been thus talking about him.

Mrs. Roberts, for the defence, testified that, at her house, about three weeks after the difficulty, Jennie Bailey said she supposed the defendant had as much right to whip her as he had to whip one of his own children.

The defence here closed, and the State recalled Jennie

Bailey. She said that, before the difficulty happened, the defendant and she were at the well. He had been drawing water, and she came there for the same purpose. He talked saucy to her. Witness did not like to say, " before these men," what he said to her, but it was improper talk. He talked vulgar to her. On her cross-examination she stated, in reply to defendant's counsel, that the saucy and improper language of the defendant was that he " wanted some ;" to which witness made no reply, but went into the house. She could not swear whether defendant meant that he wanted some water, or what he did mean ; but she thought it meant " something bad" ! ! !

The opinion of this court discloses all other material facts. The jury found the defendant guilty, and assessed a fine of $150 against him. His motion for a new trial was overruled, and he appeals.

*Grigsby & Willis*, for the appellant.

*George McCormick*, Attorney-General, for the State.

ECTOR, P. J. Robert Davis, the defendant, was indicted in the District Court of Montague County, charged with the commission of an aggravated assault upon one Jennie Bailey. The indictment charges that Robert Davis was an adult male person, and Jennie Davis a female, at the time of the commission of said assault. The case was tried at the October term of the County Court of Montague County. The defendant was convicted of an aggravated assault, and a fine of $150 was assessed against him. Motions for a new trial and in arrest of judgment having been heard and overruled, the defendant excepted, and took an appeal.

The first error assigned is, that " the court erred in overruling the motion of appellant to quash the indictment." The first ground of the motion calls the court's attention to the indictment, — that " it does not appear therefrom that

the same was presented in a court having jurisdiction of the offence set forth.''

Counsel for appellant, in their able brief, say that the court having jurisdiction of an aggravated assault is the County Court, but that the indictment in this case shows on its face that it is presented in the '' District Court ; '' that no offer was made by the county attorney to amend the indictment in this particular, and hence the motion should have been sustained.

The present Constitution of this State, in art. 5, sect. 17, provides that prosecutions may be commenced in the County Court '' by information filed with the county attorney, or by affidavit, as may be provided by law. Grand juries empanelled by the District Courts shall inquire into misdemeanors, and all indictments therefor returned into the District Courts shall forthwith be certified to the County Courts, or other inferior courts having jurisdiction to try them, for trial.'' The indictment charges the defendant with a misdemeanor, committed in the county of Montague, and therefore was properly presented in the District Court.

Defendant's motion to quash also objected to the indictment because its finding does not appear to be the act of a grand jury of Montague County. The indictment commences : '' In the name and by the authority of the State of Texas, the grand jurors of the State of Texas, duly empanelled, charged, and sworn to inquire of offences committed in the county of Montague, upon their oath present in the District Court for said county,'' etc. This bill was returned into the District Court of Montague by the grand jury, and filed June 15, 1878. We think it clearly appears, from the words used in the indictment itself, that it was presented in the proper county.

The counsel for appellant insists that the indictment, instead of averring that they were the grand jurors of the State of Texas, should have described them as grand jurors empanelled from the body of Montague County, in order

to comply with our statute prescribing the requisites of an indictment. Pas. Dig., art. 2863, subdiv. 3. Our attention has been called by counsel for appellant to the case of *The State* v. *Hilton*, 41 Texas, 565, appealed from the District Court of Titus. It is contended that it is almost precisely like the one at bar, and the defendant's motion to quash the indictment was sustained by the court below, and by the Supreme Court. In the case cited, the name of the county, in describing the grand jury and the venue of offences about which the jury were to inquire, was entirely omitted. The indictment reads as follows: —

"No. 954. *The State of Texas* v. *A. J. Hilton.* In the name and by the authority of the State of Texas, the grand jurors of the State of Texas, duly elected, empanelled, sworn, and charged to inquire into and true presentment make of all felonies and misdemeanors committed in the county of ———, in said State, cognizable in the District Court held in and for the county of Titus and State aforesaid."

In the case at bar, the indictment distinctly avers that the jury were to inquire of offences committed in Montague County; and we think that the motion to quash the indictment was properly overruled.

The second assignment is, that "the court erred in his written charge to the jury, in not instructing them as to the law applicable to the case made by the indictment, and the proof made on the trial of this cause, as shown by appellant's bill of exceptions No. 2." The court, in his charge to the jury, after defining an assault and battery and an assault, proceeded to instruct them as follows: "An assault and battery becomes aggravated when committed by an adult male upon the person of a female. If the jury believe, from the evidence detailed to you in this case, that Robert Davis, an adult male, did, on any day before and within one year next preceding the finding of this bill of indictment in this cause, in the county of Montague, State

of Texas, commit an aggravated assault on the person of Jennie Bailey, a female, you will find the defendant guilty, and assess his punishment at a fine not to be less than $100, nor to exceed $1,000 ; and you may, in your discretion, find a verdict for the imprisonment of the defendant in the county jail for any length of time not to exceed two years. If you do not believe the defendant is guilty as charged in the indictment, you will find a verdict of not guilty, for defendant. It devolves upon the State to prove all the material allegations set forth in the indictment ; the defendant is presumed to be innocent until the contrary is clearly established to the satisfaction of the jury, and the defendant is entitled to the benefit of all reasonable doubts," etc. The defendant excepted to the charge of the court, and asked a number of additional instructions, which were refused by the court.

Two objections are made in the brief of counsel to the charge of the court : 1st. That the court told the jury that the defendant was an adult male, and that Jennie Bailey was a female, which he had no right to do ; both of which facts were matters of proof. 2d. That the court erred in his charge as to the limitation being one year next preceding the bill of indictment.

These objections to the charge of the court are not well taken ; the charge is not obnoxious to the criticism urged against it. And, besides, the defence relied on was that Jennie Bailey had been talking in an unwarranted manner about defendant to his children ; that, under the circumstances, she needed to be corrected in moderation ; that she had agreed to be corrected for any misconduct ; that she was either living with defendant's family as one of his children, or as a servant, and defendant had the legal right to correct her for such misconduct. No controversy was made at the trial as to whether the defendant was an adult male, or Jennie Bailey a female. The evidence of both parties concurs to establish these facts. It appears from

the evidence that the portions of the charge complained of could not have resulted to the prejudice of any right of the accused.

For all misdemeanors, an indictment or information may be presented within two years from the commission of the offence, except misdemeanors which justices' courts have concurrent jurisdiction to try; in which cases the indictment may be presented within one year, and not afterwards. Justices' courts have not jurisdiction to try a case of aggravated assault. Pasc. Dig., art. 2653. The portion of the charge which limited the jury, in their investigation as to when the offence was committed, if at all, to within one year next preceding the indictment, was in favor of the defendant, and was a matter of which he cannot justly complain.

The third error assigned is, that "the court erred in refusing to give the written instructions to the jury that were asked by defendant." The first instruction asked by the defendant is as follows: "Violence used to the person does not amount to an assault or battery in the following cases: 1st. In the exercise of the right of moderate restraint or correction given by law to the parent over the child, the guardian over the ward, the master over his servant or apprentice, the teacher over the scholar; and if the jury believe, from the evidence adduced in this cause, that Jennie Bailey had agreed to live with the defendant and his family as one of his children in the family, and that she had agreed as such child or member of his family she was to be corrected or chastised in moderation by the defendant, and at the time she received nothing more than moderate correction, pursuant to such agreement, then you are authorized to find the defendant not guilty. Or, if you believe that, at the time when defendant corrected Jennie Bailey, she was his servant in the family, then you will acquit the defendant, if you believe the violence used was moderate in its nature, and was no more than was necessary at the time to remind

her of her duty to obey as such servant, and to bring her into subjection to her master."

The first subdivision of art. 2145, Paschal's Digest, provides that " Violence used to the person does not amount to an assault and battery in the following cases: in the exercise of the right of moderate restraint or correction given by law to the parent over the child, the guardian over the ward, the master over his servant or apprentice, the teacher over the scholar." The first question, then, which would naturally arise in construing this statute, is, what restraint or correction is given by law in such cases as above enumerated. In determining this question we must look to the common law. This provision of the statute embraces, under the terms, " parent and child," those only who really occupy such relationship towards each other. By the common law, a parent may lawfully correct his child, being under age, in a reasonable manner, for this is for the benefit of his education. 1 Cooley's Bla. 451. Jennie Bailey did not occupy the relationship of child to the defendant. If she occupied the relation of a servant in the family, then we believe defendant had no right to chastise her. We make the following extracts from Mr. Kent: " It is said that the master may give moderate corporal correction to his servant, while employed in his service, for negligence or misbehavior ; but this power does not grow out of the contract of hiring ; and Dr. Taylor justly questions its lawfulness, for it is not agreeable to the genius and spirit of the contract. And, without alluding to seamen in the merchant-service, it may be safely confined to apprentices and menial servants while under age, for then the master is to be considered as standing *in loco parentis.*" 2 Kent's Comm. 294, 295.

And Mr. Chitty says : " A master cannot, by way of correction, even moderately beat his *servant* or laborer in husbandry or otherwise, as he might his child or apprentice ; and if he do, the servant may lawfully depart, or obtain

his discharge by application to a justice, and support an action for battery. There is, however, an exception as to two description of servants, viz., sailors and soldiers, allowed from the necessity of larger powers to preserve discipline and prevent mutiny.

" A master has no right to correct a menial or domestic servant otherwise than by words and remonstrances; and if he beat him, though moderately, by way of correction, it is good ground for the servant's departure, and he might support an action against the master." 1 Chitty's Gen. Pr. 73, 75. See also *Matthews* v. *Terry*, 10 Conn. 457 ; *The Commonwealth* v. *Baird*, 1 Ashm. 267 ; 1 Cooley's Bla. 428. The implied authority of a parent or master of an apprentice to correct, is merely for the moral improvement of the child.

The court did not err in refusing the charges asked by defendant upon the ground of moderate correction by one standing *in loco parentis*.

The evidence shows either that the defendant, though a man " in the sere and yellow leaf, yet burned with the heated blood of a mere youth " ( as said by the attorney-general in his brief ), or that she misconstrued the language of defendant to her. If her testimony is to be believed, and the jury believed her, she evidently thought that defendant said improper things to her, and her construction was a most reasonable and natural one to be placed upon his words. If she misconstrued his language, the proper course for defendant to have pursued, when informed of her mistake, would have been to have gone to her, disabused her mind, and by words and remonstrance corrected her. On the contrary, he did nothing of the sort, but provided himself with a switch, with which he proceeded to chastise her.

We have noticed the most material questions presented in the record, and find no error committed in the court below on the trial of this cause. The judgment is affirmed.

*Affirmed.*